Frank Campbell BABER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 07–95–0336–CR, 07–95–0337–CR.

Court of Appeals of Texas, Amarillo.

Sept. 12, 1996.

Rehearing Overruled Oct. 14, 1996.

Roderique S. Hobson, Jr., Law Offices of Roderique S. Hobson, Jr., Lubbock, for appellant.

Terry D. McEachern, Robert W. Kinkaid, Jr., Hale County District Attorney, Plainview, for appellee.

Before BOYD and QUINN, JJ., and REYNOLDS, Senior Justice.*

QUINN, Justice.

Frank Campbell Baber, appellant, appeals his two convictions for indecency with a child. The children involved where his daughters, Crystal and Casandra. His actions *vis-a-vis* the former child were encompassed in the indictment assigned cause number B11999–9503 and concerning the latter, in the indictment assigned number B12000–9503. Through one point of error, with two subparts, he asks whether the court erred in denying his motion for new trial complaining of his counsel's ineffective assistance during the punishment phase of the trial. We answer "no," overrule the point, and affirm.

***Background***

The two proceedings were to be tried jointly. After the jury was empaneled, and in its presence, appellant pled guilty to both charges. That left the matter of punishment to be resolved, which matter was submitted to the jury. Furthermore, appellant requested that he receive probation. Upon consid-

ering the evidence and appellant's request, the jury assessed punishment in B11999 at ten years imprisonment with a recommendation of probation and, in B12000, at nineteen years imprisonment.

Next, the trial court entered judgment on the verdicts, and appellant timely moved for a new trial "as to punishment only." The court convened a hearing and received evidence regarding the issues raised in the motion. Thereafter, it entered findings of fact and conclusions of law denying the relief sought.[1]

***Point of Error One***

Appellant divides his claim of ineffective assistance into two general categories. The first involves the failure "to obtain an examination of appellant by a competent mental health expert" and the second, the failure to "have a firm command of the law and the facts applicable to this case." We address each after discussing the applicable standard of review.

*a. Standard of Review*

Whether to grant a new trial lies within the court's discretion. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993). Furthermore, we may interfere with the decision only if the court abuses its discretion. *Id.*; *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim.App.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). The latter occurs when the court acts arbitrarily or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990), *quoting*, *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Implicit within the standard lies an element of deference. That is, not only must the court be wrong but so clearly wrong that the decision falls outside the zone of reasonable

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

1. The entry of such findings and conclusions were not only unnecessary but potentially violative of Rule 31(e)(2) of the Texas Rules of Appellate Procedure. *See Meriwether v. State*, 840 S.W.2d 959, 960 (Tex.App.—Beaumont 1992, pet. ref'd) (holding that the court errs by entering findings of fact and conclusions of law in response to a motion for new trial). Yet, since no one complained, we too pass it.

disagreement. *Cantu v. State*, 842 S.W.2d at 682; *Montgomery v. State*, 810 S.W.2d at 391. For instance, if the circumstances could be reasonably interpreted several ways and the court selects one of them, then its action constitutes a legitimate exercise of discretion.

Next, the guiding rules and principles applicable when an appellant complains of defective counsel during the punishment phase of the trial are well settled. We must determine not only if counsel was reasonably likely to render effective assistance but also if such assistance was reasonably rendered. *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim.App.1992). Authority further dictates that, in applying the test, we "eliminate the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate the conduct from *counsel's perspective at the time.*" *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim.App.), *cert. denied*, 510 U.S. 840, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993). And, until the appellant overcomes the presumption that his counsel's actions were sound trial strategy, the assistance rendered is presumed effective. *Id.*

■ Finally, since the record discloses that the actions of which appellant complains actually involved trial strategy, one other guideline comes to play. It directs that "[s]trategic choices made after a thorough investigation of law and facts relevant to plausible options are ... virtually unchallengeable" and that such choices made after a "less than complete investigation" are reasonable only to the extent that reasonable professional judgment supports the limited investigation. *Ex parte Kunkle*, 852 S.W.2d at 505, *quoting, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see Wylie v. State*, 908 S.W.2d 307, 308 (Tex.App.—San Antonio 1995, pet. ref'd) (stating that if there is any basis for trial strategy to have been a reason for trial counsel's action, then further inquiry is inappropriate); *Jenkins v. State*, 870 S.W.2d 626, 631 (Tex.App.—Houston [1st Dist.] 1994, pet.

ref'd), *cert. denied*, —— U.S. ——, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996) (stating that if there is any error in trial strategy, it will be deemed inadequate representation only if there was no plausible basis for it). Much depends upon what appellant told his attorney. *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. at 2066–67, 80 L.Ed.2d at 695–96. For example, "when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." *Id.* Or, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue ... [them] may not later be challenged as unreasonable." *Id.*

### b. Failure to Submit Appellant to an Examination by a Mental Health Expert

■ Since the only issue presented to the jury involved punishment, psychological testimony regarding his motivation and the likelihood of offending again were "critical," according to appellant. He contended, through the motion for new trial, that he was not a pedophile. Instead, his sexual perversions were supposedly attributable to his ingestion of alcoholic beverages. Furthermore, a report issued by a psychologist, Richard Wall, Ph.D., *after* trial supported this.[2] So, appellant posits, his trial attorney was ineffective by failing to submit him to mental examination and offer the findings, if favorable, as evidence. We disagree for the following reasons.

■ First, appellant wanted probation for both charges. The jury and trial judge granted him that in one of the two cases. Trial counsel having been so successful, we find it difficult to conclude that his strategy was implausible. Simply put, appellant's receipt of probation is evidence upon which the trial court could reasonably rely in holding

**2.** The opinions derived by Dr. Wall were tendered into evidence at the hearing on appellant's motion for new trial. In sum, he concluded that appellant's use of alcohol influenced his criminal conduct. Appellant's "sexual acting out with his daughters appears to have been the result of intoxication. Some of his actions appear to have been carried out while in a 'black out' ... a time in which an intoxicated brain simply does not register any memory." Appellant presented little threat to children when sober, concluded the doctor.

that the strategy invoked by counsel was indeed plausible.

Second, the aforementioned strategy was based on what we would label as cooperative honesty. Rather than attempt to hide anything or evade responsibility, appellant and counsel would be candid. Culpability would be admitted, and appellant would be portrayed as a penitent individual suffering from emotional problems related to his guilt and needing help. Several indicia were considered before deriving this scheme. For instance, counsel knew that his client claimed to be on the verge of a nervous "breakdown." So too did the attorney generally know that his client drank alcoholic beverages. Moreover, these issues were specifically addressed with appellant. Yet, "[n]othing in those discussions gave rise to me to ... formulat[e] a belief that there was a need for" testimony from an expert in mental health, so said the attorney. And, against this information, counsel had to weigh potential juror reaction. Based upon his observations of jurors within the county of trial, one's attempt to excuse criminal activity by hiding behind the mask of drugs and alcohol had limited value.[3] "Hale County juries don't like drugs and alcohol," attested counsel.

Thus, after balancing his experience and the information garnered from appellant, counsel struck upon the aforementioned stratagem. Appellant pled guilty, answered questions openly and honestly, and indicated that he needed counseling. His use of alcohol was mentioned, though not stressed, and he asserted that he would never act similarly again. After hearing this, the jury recommended probation in one case wherein he only touched his daughter's breast and incarceration in the one where he placed his mouth on his child's genitalia.

■ Third, though defense counsel must conduct an independent investigation into the facts of the case, *Ex parte Duffy,* 607 S.W.2d 507, 516–17 (Tex.Crim.App.1980); *accord, Smith v. State,* 894 S.W.2d 876, 880 (Tex. App.—Amarillo 1995, pet. ref'd) (stating the same), the extent of the investigation may differ from case to case. Furthermore, and as mentioned above, the representations uttered by the appellant himself can influence the degree to which his attorney must investigate. *Strickland v. Washington, supra.* Here, appellant spoke of his emotional condition and alcohol use. But, as stated by counsel, "what ... [appellant] told the doctor and what he told me [were] not the same thing, not the same." In other words, appellant may have been candid with Dr. Wall but he was not with his attorney. So, *at the time he was preparing for trial,* counsel had general (and potentially false) information about a possible ground of mitigation which could induce local jurors to react adversely. Thus, he exercised his professional judgment to forego further investigation about the matter though having performed a "less than complete investigation." *Ex parte Kunkle,* 852 S.W.2d at 505. The trial court could have well construed the decision as reasonable under the circumstances and dictates of *Kunkle.*

■ Fourth, potential jury reaction to a line of defense is a legitimate factor to consider in developing strategy. *Ex parte Davis,* 866 S.W.2d 234, 242 (Tex.Crim.App. 1993); *Rosales v. State,* 841 S.W.2d 368, 377 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) (holding the same). Thus, counsel at bar acted correctly in considering it.

■ In sum, strategy need not utterly succeed to insulate an attorney from a claim of ineffectiveness. And, though counsel may not have investigated something as thoroughly as his client wants, he nevertheless exercised his professional judgment after weighing experience with the information provided by appellant. Under the circumstances, we cannot hold that the trial court acted beyond the zone of reasonableness in denying new trial.

### c. Purported Failure to Demonstrate Command of Applicable Law

To the claim addressed above, appellant adds other examples of trial conduct which

---

**3.** Counsel, an attorney in Hale County, Texas, represented that twenty to thirty percent of his practice involved the criminal law. Additionally, he had tried three to six felony cases in his five years of practice. However, this was his first case involving indecency with a child.

he believes is of ineffectiveness. These examples involve the failure to object to the State's use of leading questions and the State's attempt to impeach appellant via unadjudicated extraneous offenses, inadmissible convictions, and prior bad acts.

 As to the matter of leading questions, appellant asserts that 140 were propounded by the State. Yet, only three instances are cited and discussed.[4] Moreover, each involved queries made to minor children. Since it is well-settled that the court may grant parties leeway in examining children through leading questions, *Moon v. State,* 856 S.W.2d 276, 279 (Tex.App.—Fort Worth 1993, pet. ref'd), trial counsel could well have opted not to object to something which could have been allowed. Furthermore, objecting under those circumstances could have been viewed by counsel as adverse to his trial strategy of cooperation, honesty, and openness.

As to the remaining matters, statute permits the admission of evidence involving anything "the court deems relevant to sentencing" during the punishment phase of trial. *Tex.Code Crim. Proc. Ann.* art. 37.07 § 3(a) (Vernon Supp.1996). The scope of this provision includes, among other things, evidence of the appellant's prior criminal record, "general reputation," "character," and "*any* other evidence of an extraneous crime or bad act ... shown beyond reasonable doubt ... to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." *Id.* (emphasis added). Thus, appellant's previous convictions for theft and driving while intoxicated fell within the parameters of evidence relevant to sentencing. So too did the evidence of prior molestations committed by him upon his children.[5] Additionally, appellant himself admits in his appellate brief that the evidence of "an adulterous affair and not

paying child support [were] prior bad acts"; as such they too were relevant.

Again, given counsel's strategy to appear cooperative and open, it is plausible that objecting to admissible evidence would not foster the desired perception. Indeed, counsel is not required to object simply to object. Thus, we again view the trial court's decision as within the realm of reasonable disagreement and a legitimate exercise of discretion.

Accordingly, the judgments are affirmed.

---

4. Of the three cited, none are accompanied by reference to the page on which they appear in the 221 page statement of facts.

5. Mentioned below is the contention that counsel should have at least had the State prove that the extraneous molestations occurred beyond reasonable doubt. Since that same argument was not made here, we do not consider it.