Affirmed and Memorandum Opinion filed July 28, 2009








Affirmed and Memorandum Opinion filed July 28, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00371-CR

NO. 14-08-00372-CR

NO. 14-08-00373-CR

____________

 

STEVEN ANDREW BRAMBILA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 209th
District Court

Harris County, Texas

Trial Court Cause Nos. 1095552,
1105578, 1105579

 



 

M E M O R A N D U M    O P I N I O N

Appellant Steven Andrew Brambila challenges his conviction
for three counts of aggravated sexual assault of a child, arguing that his
trial attorney rendered ineffective assistance by failing to object to leading
questions that contained or elicited testimonial hearsay.  We affirm.








I.  Factual
and Procedural Background

A few days before Thanksgiving in 2006, appellant=s 13-year-old stepdaughter
L.C. told family friend Denise Murray that appellant had sexually abused her
from the time she was in second grade until appellant separated from L.C.=s mother earlier
that year.  As Murray later testified, L.C. stated that appellant had touched
her vagina, breasts, buttocks, and anus; penetrated her vagina with his finger
on multiple occasions; and had made her perform oral sex for him.  According to
Murray, L.C.=s mother wanted Murray to persuade the child to
forgive and accept appellant because he was going to resume living with them. 
Murray telephoned the police, who interviewed L.C. that night.  

As part of the criminal investigation, a forensic
interviewer later spoke with L.C. and her sister A.C., and both girls gave
videotaped statements of their allegations.  Police also interviewed appellant,
who admitted that he had engaged in sexual conduct with his two stepdaughters
over a period of years.  He admitted that he had engaged in oral sex with both
children and had intercourse with A.C., who was two years older than L.C.  At
the time of his interview, appellant calculated that he had not had sex with
A.C. in approximately two years because A.C. told her boyfriend about appellant=s behavior and the
boyfriend  Asaid he=d tell the law if
it happened again.@

Appellant denied having intercourse with L.C., but stated
that he had rubbed his genitals against her, so Ashe may have
thought I was trying.@  When asked about the number of times he
had oral sex with L.C., he responded that it was Atoo many times for
me to say.  I mean, it just happened all the time.  It got to a point I guess
where it just escalated and became a callous, where I didn=t feel like I was
doing anything wrong anymore.@  When asked L.C.=s age when
appellant began behaving inappropriately, appellant stated he believed she was
about eight years old.  Although he stated that his wife told him that L.C. was
only six years old at that time, he said, A[I]nside I don=t want to believe
that.@ 








Appellant was indicted on three charges of aggravated
sexual assault of a child for (1) penetrating L.C.=s sexual organ
with his finger, (2) penetrating L.C.=s mouth with his
sexual organ, and (3) causing A.C.=s sexual organ to
contact his sexual organ.  The three cases were tried together, and appellant=s videotaped
confession was the only exhibit admitted during the guilt/innocence phase of
trial.

When she testified at trial, L.C. was fifteen and resided
with her mother.  L.C. answered questions identifying herself, appellant, and
her date of birth, but when the State asked her about the abuse allegations,
she repeatedly responded, APlead the fifth.@  After the trial
court instructed her that she was required to answer the State=s questions, L.C.
admitted that she made allegations of sexual abuse to others, but claimed that
her prior statements were lies and the abuse described never occurred.  She
also stated that she did not know appellant had confessed. 

At the time of trial, A.C. was eighteen, pregnant, and
recently married, but she and her husband resided with her mother.  A.C.
testified she did not remember telling anyone that appellant had sexually
abused her, and although she agreed appellant molested her Aa long time ago,@ she stated she
had no memory of it.  She admitted that a prior boyfriend confronted appellant
about abusing her, but she testified that she had not told her boyfriend that
appellant had done so.  She also confirmed that her mother and appellant
remained married. 

Forensic interviewer Aimee McAndrew testified about the
investigation of the abuse allegations.  According to McAndrew, L.C. reported
that appellant had raped her and A.C., and L.C. further described instances in
which appellant penetrated her vagina with his finger and required her to
perform oral sex.  McAndrew also testified that L.C. told her appellant began
abusing her when she was six years old.  Although McAndrew also had interviewed
A.C., neither the State nor the defense inquired into the substance of that
interview. 








During closing argument, the State emphasized and quoted
from appellant=s confession, but appellant=s defense counsel
pointed out that A.C. and L.C. recanted their earlier accusations, and asked
the jury to Ajust look at the evidence as it is and listen to the
people, the victims, and make your ruling based on what the victims want.  They=re the ones that
have to live with this.@  

The jury found appellant guilty as charged and assessed
punishment at fifty years= imprisonment for each of the three
offenses.  The trial court ordered the sentences to run concurrently, and this
appeal ensued.

II.  Issue Presented

In a single issue, appellant contends he received
ineffective assistance of counsel because his trial attorney did not object to
certain of the prosecutor=s questions to L.C., A.C., and McAndrew.  

III.  Standard of Review

We review claims of ineffective assistance of counsel under
the familiar standard set forth in Strickland v. Washington, 466 U.S.
668 (1984), which applies to claims arising under the state or federal
constitution.  Hernandez v. State, 726 S.W.2d 53, 56B57 (Tex. Crim.
App. 1986) (en banc). Under the Strickland test, an appellant must prove
not only that his trial counsel=s representation was deficient, but also that
the deficient performance was so serious that it deprived the appellant of a
fair trial.  Strickland, 466 U.S. at 687.  To satisfy both requirements,
an appellant must prove by a preponderance of the evidence that counsel=s representation
fell below the objective standard of prevailing professional norms, and there
is a reasonable probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Id. at 690B94.








          Our
review of defense counsel=s performance is highly deferential.  Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc). 
Allegations of ineffective assistance will be sustained only if firmly founded
in a record that affirmatively demonstrates the alleged ineffectiveness.  McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996) (en banc), abrogated
on other grounds by Mosley v. State, 983 S.W.2d 249, 264 n.18 (Tex. Crim.
App. 1998) (en banc).  When, as in this case, we are confronted with a silent
record, we begin our review with the strong presumption that defense counsel=s actions were
motivated by sound trial strategy, and we will not conclude that representation
was deficient unless counsel=s conduct was so outrageous that no
competent attorney would have engaged in it.  Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005). 

IV.  Analysis

Appellant contends that a number of the prosecutor=s questions to
L.C., A.C., and McAndrew contain Ainadmissible
testimonial hearsay, and thus, his counsel rendered ineffective assistance by
failing to object to them.@  Appellant first argues that his counsel=s conduct fell
below the objective standard of prevailing professional norms because his
attorney did not object to questions in which L.C. was asked if she made
allegations of abuse to police and told Murray that appellant had molested
her.  But Murray already had testified to these facts without objection, and
appellant does not contend that his attorney should have objected to Murray=s testimony.  The
failure to object to the admission of cumulative evidenceC particularly
where, as here, appellant does not contend that the probative value of the
additional testimony was substantially outweighed by the danger of unfair
prejudice[1]Cdoes not provide a
basis on which to conclude that the accused was inadequately represented at
trial.   See Stephens v. State, 276 S.W.3d 148, 154 (Tex. App.CAmarillo 2008,
pet. ref=d) (explaining
that, where an appellant does not contend that his defense attorney=s failure to
object to certain evidence constitutes ineffective assistance of counsel, the
attorney=s failure to
object to subsequent testimony that is merely cumulative of that evidence does
not fall below professional norms).  








Appellant also criticizes his trial attorney=s failure to
object when the prosecutor asked L.C. if she made particular statements to the
forensic interviewer.  Although appellant claims that the prosecutor=s questions
contained Aobviously inadmissible testimonial hearsay statements,@ he does not
explain on appeal why the questions merit this characterization.  Appellant=s arguments appear
to be based on the assumption that the prosecutor=s questions and
the responses they elicited were offered as proof of the matters asserted,[2]
but A[o]ne of the
common methods of impeachment is by the use of prior inconsistent statements,
oral or written, under oath or not.@  Adams v.
State, 862 S.W.2d 139, 147B48 (Tex. App.CSan Antonio 1993,
pet. ref=d).  And the
State, like any other party, is permitted to impeach its own witness with a
prior inconsistent statement.  See Tex.
R. Evid. 607 (AThe credibility of a witness may be
attacked by any party, including the party calling the witness.@); Barley v.
State, 906 S.W.2d 27, 37 n.11 (Tex. Crim. App. 1995) (explaining that where
there is no evidence that the witness recanted a prior statement before trial,
there is no showing that the State used the prior inconsistent statement for
the primary purpose of placing otherwise inadmissible evidence before the jury
under the guise of impeachment).  As the Court of Criminal Appeals subsequently
clarified, the State=s knowledge that its witness will testify
unfavorably is not a limiting factor under Rule 607, but is instead a factor to
be analyzed under Texas Rule of Evidence 403 in considering whether the
probative value of the prior inconsistent statement as impeachment evidence is
outweighed by the danger of unfair prejudice.  Hughes v. State, 4 S.W.3d
1, 4B6 (Tex. Crim. App.
1999).  As previously noted, however, appellant has not argued on appeal that
his trial attorney should have objected on this basis.  Moreover, appellant
neither asserts that the State knew the complainants would attempt to deny or
disavow their prior allegations nor argues that the danger of unfair prejudice
from this line of inquiry substantially outweighed its probative value.  








Although A[t]estimony admitted for impeachment
purposes is without probative value@ and its use
therefore should be restricted by a limiting instruction to the jury,[3]
appellant does not complain of his attorney=s failure to
object to questions intended to impeach the witness, and does not challenge his
attorney=s failure to
request an instruction limiting the jury=s consideration of
the responses elicited.  Appellant=s contention on
appeal is simply that his counsel was ineffective in failing to raise an
objection that these questions contained or elicited statements of  testimonial
hearsay.  But the failure to object cannot serve as the basis for an
ineffective-assistance claim unless, at a minimum, the trial court would have
erred in overruling the objection.  See Ex parte White, 160 S.W.3d 46,
53 (Tex. Crim. App. 2004).[4] 
Because defense counsel reasonably could have concluded that the State=s questioning
regarding the complainants= earlier statements was directed at
impeachment rather than as proof that the initial allegations were true, we
conclude that appellant has failed to establish that a hearsay objection was
required or that the trial court would have erred in overruling it.  Moreover,
inasmuch as appellant=s defense in the guilt/innocence phase and
his plea for leniency in the punishment phase were based on the complainants= trial testimony
minimizing or even recanting their earlier allegations, we do not agree that
the failure to cut off this line of inquiry with a sustainable objection falls
short of prevailing professional norms.  Cf. Stepp v. State, No.
14-05-00635-CR, 2007 WL 608977, at *7 (Tex. App.CHouston [14th
Dist.] Sept. 12, 2007, pet. ref=d) (mem. op., not designated for
publication) (A[W]e are not persuaded that this gentler cross‑examination
of a minor, who has allegedly been the victim of sexual abuse almost since
infancy and who was being cross‑examined as the principal witness in the
prosecution of her father, falls outside the bounds of objectively reasonable
representation.@).  








Appellant=s complaint that his attorney was
ineffective in failing to object to the State=s examination of
A.C. is similarly unavailing.  A.C. admitted that her former boyfriend
confronted appellant about the alleged abuse, but evidence regarding the
confrontation already had been admitted through appellant=s confession. 
Like the prosecutor=s questions to L.C. as to whether she had
accused appellant of sexual abuse, these leading questions simply elicited
cumulative evidence, and defense counsel=s failure to
object to them was not inconsistent with sound trial strategy.  See Young v. State, 10 S.W.3d 705, 713 (Tex. App.CTexarkana 1999, pet. ref=d) (observing that it may be Asound trial strategy for opposing
counsel to choose not to object to leading questions when the evidence will
come in anyway@).  The prosecutor also asked leading questions as to whether A.C.
remembered making particular statements to her mother and the forensic
interviewer, but the rules of evidence do not forbid the use of leading
questions on direct examination; their use is permitted, within the trial court=s discretion, as necessary to develop
the witness=s testimony.  Tex. R. Evid. 611(c);
see also Jordan v. State, 154 Tex. Crim. 217, 219, 226 S.W.2d 449, 451
(1950) (observing that it is permissible to ask leading questions of an
unwilling or hostile witness). 

Appellant next contends that his trial attorney rendered
ineffective assistance by failing to object to the prosecutor=s questions to
McAndrew regarding L.C.=s recorded statement.  According to
McAndrew, L.C. Aoffered two instances of . . . digital
penetration of her vagina by [appellant], and then she disclosed acts of oral
sex where her mouth was penetrated by the defendant=s penis.@  But the jury
already had heard from Murray that L.C. made such statements; L.C. acknowledged
that she made the allegations; and appellant himself, through his videotaped
confession, admitted that he required oral sex from L.C. on countless
occasions.  McAndrew also stated that, according to L.C., appellant began
abusing her when she was six years old, but here too, the jury already had
heard appellant=s confession that, according to his wife,
he had been abusing L.C. since she was six.  








Finally, appellant argues that Atrial counsel
could have and should have objected to the endless questions by the prosecutor
as a violation of appellant=s Sixth Amendment right to confrontation
pursuant to Crawford v. Washington, 541 U.S. 36 (2004).@  But where, as
here, Athe declarant
appears for cross‑examination at trial, the Confrontation Clause places
no constraints at all on the use of his prior testimonial statements.@  Id. at 59
n.9.  Because A.C. and L.C. appeared for cross-examination at trial, a
Confrontation-Clause objection properly would have been overruled.[5]


In sum, we are not persuaded by appellant=s arguments that
his attorney was required to object to any of the challenged questions or
testimony.  AIn regard to making objections, advocates must be free
to choose not to make them even if they have a legal basis for doing so.@  McKinny v.
State, 76 S.W.3d 463, 473 (Tex. App.CHouston [1st
Dist.] 2002, no pet.) (en banc).  Defense counsel can render effective
assistance without raising every sustainable objection, and the jury=s potential
reaction to objections as well as testimony are legitimate factors to
consider.  See Baber v. State, 931 S.W.2d 359, 362B63 (Tex. App.CAmarillo 1996,
pet. ref=d).  








We presume that defense counsel=s failure to
object was motivated by trial strategy within the wide range of reasonable and
professional assistance.  Bone v. State, 77 S.W.3d 828, 833 (Tex.
Crim. App. 2002).  Here, appellant=s attorney could
have considered and legitimately rejected, for tactical reasons, each of the
objections suggested on appeal. Appellant=s attorney urged
the jury to Alisten to the people, the victims, and make [its]
ruling based on what the victims want.@  Defense counsel
reasonably could have refrained from objecting out of a legitimate concern that
jurors would view a plea to Alisten to the victims@ as inconsistent
with attempts to prevent the complainant=s statements from
being heard.  Appellant=s attorney was entitled to and presumably
did consider whether, in light of appellant=s videotaped
confession, such objections might bear a greater risk of antagonizing the jury
than supporting appellant=s case.  We therefore overrule appellant=s sole issue on
appeal and affirm the trial court=s judgment.

 

 

 

 

/S/       Eva M. Guzman

Justice

 

Panel consists of Justices Yates,
Guzman, and Sullivan.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  See Tex.
R. Evid. 403.





[2]  See Tex.
R. Evid. 801(d) (A>Hearsay= is
a statement, other than one made by the declarant while testifying at the trial
or hearing, offered in evidence to prove the truth of the matter asserted.@).





[3]  Tex. R. Evid.
105(a); DeLeon v. State, 77 S.W.3d 300, 313 (Tex. App.CAustin 2001, pet. ref=d).





[4]  This is a necessary, but not a sufficient, condition
for the reviewing court to conclude that trial counsel=s failure to object falls outside the bounds of
reasonable representation. 





[5]  Moreover, the Confrontation Clause Adoes not bar the use of testimonial statements for purposes
other than establishing the truth of the matter asserted.@  Id. (citing Tennessee
v. Street, 471 U.S. 409, 414 (1985)).